| | |
|---|---|
| | **UNITED STATES DISTRICT COURT** |
| | EASTERN DISTRICT OF CALIFORNIA |
| DONNA JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant.<br>_____/ | Case No. 1:18–cv–00818–SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I. INTRODUCTION

On June 14, 2018, Plaintiff Donna Johnson ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II. BACKGROUND

On July 2, 2014, Plaintiff filed applications for DIB and SSI, alleging that she became disabled on March 31, 2014, due to carpel tunnel syndrome, a "back problem," and depression.

---
[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6, 8.)

(Administrative Record ("AR") 225–32, 251.)  Plaintiff was born on June 30, 1967, and was 46 years old on the alleged disability onset date.  (*See* AR 225.)  Plaintiff has a high school education, and previously worked at a temp agency from 2005 to 2009 and as a telephone operator at a VA hospital from 2009 to 2014.  (AR 46, 52–53, 253.)

**A.     Relevant Medical Evidence[2]**

    **1.     Massoud Abdali, M.D.**

On January 22, 2014, Plaintiff presented to family medicine doctor, Dr. Abdali, to receive treatment for a "ganglion cyst" in her left wrist.  (AR 352.)  Plaintiff wore a brace on her left wrist and complained of wrist, hand, and forearm pain.  (AR 352.)  She reported her pain "improved somewhat" following a carpal tunnel release procedure in July 2013, but the pain was still present and she could still feel a cyst in her wrist.  (AR 352.)  She further reported increased pain with forceful grabbing and lifting, "repetitive keyboarding," and writing.  (AR 352.)

Physical examination revealed full range of motion in Plaintiff's left wrist, but tenderness over the surgical site and dorsal wrist and a positive Phalan's test.  (AR 352–53.)  Following the physical examination, Dr. Abdali advised Plaintiff to only use the wrist brace "for flare up[s] to avoid wrist weakness," requested x-rays of Plaintiff's left wrist, and referred Plaintiff to surgery for removal of the cyst in her wrist.  (AR 353.)  The x-ray of Plaintiff's left wrist, performed on March 7, 2014, revealed no significant degenerative changes.  (AR 379.)

On July 11, 2014, Plaintiff returned to Dr. Abdali complaining of worsening left wrist, hand, and forearm pain, but Plaintiff reported that the cyst in left wrist had "gone away" on its own.  (AR 387.)  Upon physical examination, Dr. Abdali noted decreased sensation in Plaintiff's left hand from the first to fifth digit and a positive Phalan's test.  (AR 387.)  Dr. Abdali referred Plaintiff to physical therapy and directed her to continue with her home exercise program.  (AR 388.)

 Dr. Abdali also referred Plaintiff for a sensory nerve conduction study on her left wrist, which was performed on September 4, 2014.  (AR 518.)  The nerve conduction study was

---

[2] As Plaintiff's assertions of error are limited to the ALJ's consideration of the medical opinions related to Plaintiff's fingering and handling capabilities, only evidence relevant to that argument is set forth in this Order.

normal and there was "no electrodiagnostic evidence for left median nerve entrapment mononeuropathy at or distal to the wrist region, i.e. carpal tunnel syndrome." (AR 518.) Plaintiff returned to Dr. Abdali on September 10, 2014 and October 1, 2014, complaining of continuing pain in her left wrist, hand, and forearm. (AR 526, 532.) At both appointments, Plaintiff reported that medications helped with her pain and she did not want to pursue surgery. (AR 526, 532.) Physical examinations revealed full range of motion in the left wrist, but decreased sensation in Plaintiff's left hand and a positive Tinnel test. (AR 526, 532.) Dr. Abdali also noted 5/5 motor strength in bilateral upper extremities, but decreased grip strength in Plaintiff's left hand. (AR 526, 532.) On October 1, 2014, Dr. Abdali completed an "Industrial Work Status Report" for Plaintiff and concluded Plaintiff had the following permanent work restrictions: 1) keyboard/mouse use no more than thirty minutes per hour, 2) repetitive left-hand motions no more than thirty minutes per hour, and 3) gripping/grasping left hand no more than thirty minutes per hour. (AR 554.)

Plaintiff returned to Dr. Abdali on January 9, 2015, April 13, 2015 and September 22, 2015, with similar complaints regarding pain in her left wrist, hand, and forearm. (AR 543, 600, 657.) Dr. Abdali's physical examination findings were unchanged from the previous appointments in September and October 2014, which included full range of motion in the wrists, decreased sensation in the left hand, positive Tinnel test, 5/5 motor strength in bilateral upper extremities, and decreased grip strength in the left hand. (AR 543, 600, 658.) On September 22, 2015, Dr. Abdali requested a bilateral upper extremity nerve conduction study. (AR 659.) The nerve conduction study, performed on November 2, 2015, revealed "borderline" carpal tunnel syndrome in the right wrist and no evidence of carpal tunnel syndrome in the left wrist. (AR 688.)

Plaintiff returned to Dr. Abdali on November 20, 2015 with similar symptoms as her previous appointments. (AR 724–25.) Dr. Abdali noted similar findings during his physical examination and referred Plaintiff for a surgery evaluation of her right wrist. (AR 726.) The surgeon reviewed Plaintiff's medical history and noted that if Plaintiff requests further treatment, she should consider a steroid injection to treat her right wrist. (AR 732, 743.) Plaintiff opposed

3

the steroid injections and the surgeon recommended obtaining a second opinion from an orthopedic surgeon. (AR 732, 743.)

**2. Roger Wagner, M.D.**

On September 17, 2014, Plaintiff presented to internist Dr. Wagner for a consultative internal medicine evaluation. (AR 413–17.) Plaintiff reported that she primarily had carpal tunnel problems in her left hand, but she began to have symptoms in her right hand because she has been "overusing it." (AR 413.) Plaintiff further reported that she had a carpal tunnel release procedure on her left wrist in July 2013, which "helped some," but she aggravated her wrist when she returned to work. (AR 413.)

Upon physical examination, Dr. Wagner noted that Plaintiff was "easily able to bend over at the waist, take off shoes and socks and put them back on, demonstrating good dexterity and good flexibility." (AR 414.) Dr. Wagner also noted Plaintiff wore bilateral wrist braces to the examination, but Plaintiff stated she only wore them some of the time. (AR 415.) Dr. Wagner observed Plaintiff's motor strength in her bilateral upper and lower extremities was 5/5 except left hand grip strength was 4/5 and left shoulder external rotation was 4+/5. (AR 416.) Plaintiff had intact sensation and reflexes, but Dr. Wagner noted Plaintiff had "slight twitching" in her left index finger. (AR 416–17.)

Following a physical examination and review of the medical records, Dr. Wagner opined Plaintiff could stand and walk up to six hours a day and sit without limitations. (AR 417.) Dr. Wagner also opined that Plaintiff's wrist braces are "likely helpful, particularly at night." (AR 417.) Dr. Wagner concluded Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, and Plaintiff had no manipulative limitations with her right hand, but could only perform manipulative activities with her left hand frequently. (AR 417.)

**3. Leonard Gordon, M.D.**

On January 11, 2016, orthopedic surgeon Dr. Gordon completed a basic comprehensive medical-legal evaluation in the capacity as an Agreed Medical Evaluator—a physician agreed on by both parties to evaluate a plaintiff's medical conditions for a workers' compensation claim. (AR 573–77.) Dr. Gordon previously examined Plaintiff on July 22, 2013, and July 21, 2014,

4

and noted that in July 2014 Plaintiff was experiencing numbness, tingling, and difficulty sleeping due to carpal tunnel syndrome in her left wrist. (AR 574.) Plaintiff reported similar symptoms at her January 2016 examination, and added that she could not drive for long periods of time and had "difficulty doing daily activities." (AR 575.)

Physical examination revealed slight swelling at the base of both palms, more on the right than the left, and decreased sensation in the thumb, index finger, and long finger of both hands. (AR 575.) Plaintiff was also "somewhat tentative" at the extremes of flexion and extension of her wrists. (AR 576.) Dr. Gordon noted distal radiation with a "very positive Tinel's sign" on the right side, but Plaintiff had full range of motion in her fingers, thumbs, wrists, and elbows. (AR 575–76.)

Dr. Gordon diagnosed Plaintiff with carpal tunnel syndrome, more severe on the right than the left. (AR 576.) He opined Plaintiff should have carpal tunnel releases done on both wrists, first on the right, and then on the left. (AR 576.) He also opined Plaintiff may benefit from conservative treatment such as splinting her wrists at night, anti-inflammatory medication, and "advice regarding hand use and ergonomics," but he did not believe further therapy would be helpful. (AR 576.) He ultimately concluded that Plaintiff was unable to use a computer for more than one hour in an eight-hour period, and she could only lift up to five pounds "on a repetitive basis" and ten pounds occasionally. (AR 577.)

Dr. Gordon evaluated Plaintiff again on October 24, 2016. (AR 992–98.) Dr. Gordon noted that since he last saw Plaintiff, she had been "anxious about having the right side operated on because of the problems she has had on the left side, and therefore surgery was not done and no further treatment has been rendered." (AR 993.) Plaintiff complained of numbness and tingling in her right hand, and pain in the left hand at the base of the thumb with numbness in the thenar area. (AR 993–94.) Plaintiff also reported difficulty with gripping and manipulating including fastening buttons and doing fine dexterous activities. (AR 994.)

Following a physical examination, Dr. Gordon diagnosed Plaintiff with carpal tunnel syndrome on both the left and right sides. (AR 996.) Dr. Gordon opined Plaintiff was "precluded from forceful gripping or manipulating using the left side." (AR 997.) Dr. Gordon

5

also opined Plaintiff's "restrictions are activities that require more than four hours of computer work interspersed throughout an eight-hour work shift with a half hour on and a half hour off." (AR 997.)

### 4. State Agency Physicians

On September 29, 2014, P. Frye, M.D., a Disability Determination Services medical consultant, reviewed the medical evidence of record and concluded Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk six hours in an eight-hour day with normal breaks, and sit six hours in an eight-hour day with normal breaks. (AR 103.) Dr. Frye also concluded Plaintiff could perform frequent handling and fingering with her left hand, and unlimited handling and fingering with her right hand. (AR 104.) Plaintiff requested reconsideration of Dr. Frye's opinion, and on April 16, 2015, another Disability Determination Services medical consultant, Alicia Blando, M.D., performed an independent review of Plaintiff's medical records. (AR 133–35.) Dr. Blando affirmed Dr. Frye's opinion except Dr. Blando concluded Plaintiff was also limited to occasional handling and fingering with her left hand. (AR 134–35.)

## B. Administrative Proceedings

The Commissioner denied Plaintiff's application for DIB and SSI initially on September 30, 2014, and again on reconsideration on April 23, 2015. (AR 143–48, 153–58.) Consequently, on June 4, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 159–60.) Plaintiff appeared with counsel at the hearing on January 30, 2017, and testified before an ALJ as to her alleged disabling conditions. (AR 19; *see generally* AR 40–82.)

### 1. Plaintiff's Testimony

Plaintiff testified that she lives in a house with her husband and adult son. (AR 45.) She can drive only short distances including a couple blocks to the grocery store once a month, but she cannot lift anything heavier than a two-liter bottle of soda. (AR 57, 61, 67.) She does not cook because she cannot hold the pots and her son helps her if she needs to put something in the oven. (AR 57–58.) She is unable to do any chores around the house and has not been able to help clean the house for four years. (AR 58.) Plaintiff also has difficulty sleeping because her

hands go numb at night and "then there is pain all through the night." (AR 60.)

Plaintiff has attended physical therapy, but testified that "it doesn't work." (AR 62.) She is left-handed and has exercises for her hands that she can do at home, but testified they are not effective and instead, she needs "like hands on shock treatment" because her problems are with her nerves. (AR 62–63, 75.) Plaintiff testified that there are no activities that make her pain worse because she generally avoids most activities and does not do any of the activities she used to do such as jogging, cooking, and driving. (AR 61.) According to Plaintiff, she cannot use a computer anymore because she gets a tingling feeling like she is being electrocuted. (AR 61.)

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff has past work experience as a (1) materials handler, Dictionary of Operational Titles ("DOT") code 929.687-030, which was heavy work; (2) telephone operator, DOT code 235.662-022, which was sedentary work; (3) janitor, DOT code 382.664-010, which was medium work; and (4) cook helper/cafeteria attendant, which was medium work that combined the jobs at DOT codes 317.687-010 and 311.677-010. (AR 72–73.)

The ALJ then asked the VE six hypothetical questions considering a person of Plaintiff's age, education, and work experience. First, the ALJ asked the VE to consider a person capable of medium work[3] and no more than frequent stooping and frequent handling and fingering with the dominant upper extremity. (AR 73–74.) The ALJ then asked the VE whether such a person could perform any of Plaintiff's past work. (AR 74.) The VE testified that such a person could perform Plaintiff's previous work as a janitor. (AR 74.) The VE further testified that such a person could also perform the following work: (1) hospital food service worker, DOT code 319.677-014, (2) linen room attendant, DOT code 222.387-030, and (3) "stubber," DOT code 222.687-034. (AR 74.)

The ALJ asked the VE a second hypothetical question considering an individual capable

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

7

of light work[4] and frequent handling and fingering with both hands. (AR 75.) This person would also be capable of frequent stooping, but only occasional crawling and occasional climbing of ropes, ladders, and scaffoldings. (AR 75.) The VE testified such an individual could perform the following work: (1) cafeteria attendant, DOT code 311.677-010, (2) counter attendant, DOT code 311.477-014, and (3) sales attendant, DOT code 299.677-010. (AR 75–76.)

The ALJ asked the VE a third hypothetical question considering an individual capable of light work and frequent handling and fingering with both hands. (AR 75.) This person would also be capable of frequent stooping and occasional crawling, but could not climb ropes, ladders, or scaffoldings, and could only stand two hours out of an eight-hour day. (AR 76.) The VE testified that such a person could not perform any of Plaintiff's previous work, but could perform the following sedentary work[5]: (1) order clerk, DOT code 209.567-014, (2) addresser, DOT code 209.587-010, and (3) document preparer, DOT code 249.587-018. (AR 76–77.)

The ALJ asked the VE a fourth hypothetical question considering an individual capable of light work and occasional crawling, but who could not climb ropes, ladders, or scaffoldings. (AR 77.) This person would also only be capable of handling and fingering with both hands thirty minutes out of every hour. (AR 77.) The VE clarified that the hypothetical handling and fingering limitation would equate to occasional handling and fingering and testified that the job prospects for such a person were "not strong." (AR 78.) Specifically, such a person could perform the following work: (1) usher, DOT code 344.677-014, for which there exists 5,149 jobs nationally, and (2) counter clerk, DOT code 249.366-010, for which there exists 1,635 jobs nationally. (AR 78.) The VE added that according to the DOT, such a person would also be capable of working as a furniture rental clerk, DOT code 295.357-018, but in her professional opinion, the hypothetical individual would not be capable of working as a furniture rental clerk because that position works more on a computer than the DOT provides. (AR 78–79.)

The ALJ asked the VE a fifth hypothetical question considering the person described in

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).
[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally[.]" 20 C.F.R. §§ 404.1567(a), 416.967(a).

8

the fourth hypothetical, but with a sedentary exertion level. (AR 79.) The ALJ asked if there would be any work for such a person and the VE testified that there would not be a significant number of jobs in the national economy for such a person. (AR 79–80.) Finally, for the sixth hypothetical question, the ALJ asked whether the VE's response to the fifth question would be the same if the person would also be absent from work two to three times a month. (AR 81.) The VE responded that her answer would be the same and there would not be a significant number of jobs in the national economy for such a person. (AR 81.)

**C.  The ALJ's Decision**

In a decision dated March 13, 2017, the ALJ found that Plaintiff was not disabled. (AR 17–31.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 21–31.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date, March 31, 2014. (AR 21.) At Step Two, the ALJ found that Plaintiff had the severe impairments of "bilateral carpal tunnel syndrome" and "status-post left carpal tunnel release." (AR 21.) However, at Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 24.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[6]

> to perform light work as defined in 20 CFR 404.1567(c) and 416.967(c),[7] including lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for six hours; and sitting for six hours in an eight-hour workday, with the following restrictions: she can occasionally crawl and climb ladders, ropes, and scaffolds. She can frequently stoop. She can frequently handle and finger with both hands.

(AR 24.) The ALJ gave "some weight" to Dr. Wagner's opinion, but found that "evidence of carpal tunnel syndrome warranted a reduction in the residual functional capacity to the light level of exertion." (AR 28.) The ALJ gave "little weight" to Dr. Abdali's opinion because it was a

---

[6] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996), 1996 WL 374184.

[7] The Court notes that the proper citation in the Social Security regulations for the description of light work can be found at subsection (b) of 20 CFR §§ 404.1567 and 416.967, not subsection (c), which provides the description for medium work.

temporary restriction and "inconsistent with current testing confirmed by [an] EMG-nerve conduction study[.]" (AR 28.) The ALJ also gave "some weight" to Dr. Gordon's opinion, but partially discredited the opinion because "evidence available at the hearing showed the claimant could frequently handle and finger with her hands (up to 2/3rd of the workday); and she could lift and carry 20 pounds occasionally and 10 pounds frequently." (AR 28–29.) Finally, the ALJ gave "some weight" to the non-examining, state-agency physicians, Drs. Frye and Blando, but noted that "evidence at the hearing showed the claimant was more limited than previously determined." (AR 29.) The ALJ determined that, given her RFC, Plaintiff was unable to perform her past relevant work (Step Four). (AR 29.) However, the ALJ concluded Plaintiff was not disabled because she could perform a significant number of other jobs in the local and national economies including cafeteria attendant, counter attendant, and sales attendant (Step Five). (AR 30.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on April 10, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed a complaint before this Court on June 14, 2018, seeking review of the ALJ's decision. (Doc. 1.)

### III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the

evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, before considering the Fourth Step, the ALJ must determine the claimant's residual functional capacity, which is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from the claimant's impairments. *Id*. §§ 404.1520(e), 416.920(e). Next, at Step Four, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the

11

Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

In her Opening Brief, Plaintiff contends the ALJ erred by failing to properly consider the opinions of Drs. Gordon, Blando, and Abdali regarding Plaintiff's handling and fingering limitations. (Doc. 14 at 9–13.) Defendant responds that the ALJ properly weighed the conflicting evidence and medical opinions regarding Plaintiff's physical limitations. (Doc. 15 at 6–9.)

**A.   The ALJ's Consideration of the Medical Opinions**

**1.   Legal Standard**

The weight given to medical source opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining

12

professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751).

In discrediting a treating or examining physician's opinion, the ALJ "must do more than offer his conclusions" and "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "'[B]road and vague' reasons do not suffice." *Klee v. Berryhill*, No. 17-cv-00697-DMR, 2018 WL 3956337, at *13 (N.D. Cal. Aug. 17, 2018) (quoting *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989)). "An ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014).

### 2. The ALJ Failed to State Sufficient Reasons for Discrediting Dr. Gordon's Opinions.

Dr. Gordon examined Plaintiff on four occasions in his capacity as an Agreed Medical Evaluator. On January 11, 2016, Dr. Gordon opined Plaintiff could only lift up to five pounds "on a repetitive basis" and ten pounds occasionally.[8] (AR 576.) At his most recent examination on October 24, 2016, Dr. Gordon opined Plaintiff was "precluded from forceful gripping or manipulating using the left side" and limited to no more than thirty minutes of computer use every hour for a total of four hours of computer work during an eight-hour period. (AR 997.)

Dr. Gordon's opinions conflicted with the opinions of Drs. Wagner and Frye, who both opined Plaintiff could perform frequent[9] manipulative activities with her left hand and unlimited manipulative activities with her right hand. (AR 104, 417.) Therefore, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. Gordon's opinions. *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198).

---

[8] "'Occasionally' means occurring from very little up to one-third of the time." TITLES II & XVI: DETERMINING CAPABILITY TO DO OTHER WORK-THE MED.-VOCATIONAL RULES OF APPENDIX 2, SSR 83-10 (S.S.A. 1983), 1983 WL 31251 ("SSR 83-10").

[9] "'Frequent' means occurring from one-third to two-thirds of the time." SSR 83-10.

13

Here, without citing to any portion of the record, the ALJ discredited Dr. Gordon's opinions because "evidence available at the hearing showed the claimant could frequently handle and finger with her hands (up to 2/3rd of the workday); and she could lift and carry 20 pounds occasionally and 10 pounds frequently."[10] (AR 28–29.) In other words, the ALJ discredited Dr. Gordon's opinions because "evidence available at the hearing" showed Plaintiff was not as limited as Dr. Gordon opined. The "evidence available at the hearing" included over 650 pages of Plaintiff's medical records and it is not the Court's role to sift through those records looking for evidence that could support the ALJ's conclusion. *Ortiz v. Colvin*, No. 2:15–cv–1456–AC, 2016 WL 4992674, at *7 (E.D. Cal. Sept. 19, 2016) ("It is not sufficient for the ALJ simply to state that evidence and opinions exist that are contrary to the treating doctor's opinion, leaving it to the court to dig around through the record in search of the unidentified evidence and opinions." (citing *Tackett*, 180 F.3d at 1102)).

Accordingly, the ALJ erred by failing to identify even a single example of the "evidence available at the hearing" that Plaintiff could frequently handle and finger with both hands. *See, e.g.*, *Edwards v. Astrue*, No. 1:11–cv–01663–LJO–JLT, 2012 WL 3962552, at *7 (E.D. Cal. Sept. 10, 2012) (finding the ALJ erred where he "offered only his conclusions that the treating record contradicted the opinion of [a treating physician], and cite[d] broadly to nearly one hundred pages of treatment records, without referencing any findings or clinical evidence therein"); *Drogitis v. Berryhill*, No. 18-CV-02506-SVK, 2019 WL 802768, at *5 (N.D. Cal. Feb. 21, 2019) ("[B]ecause the ALJ failed to cite particular entries in these voluminous medical records anywhere in the record, the Court is unable to conclude that the ALJ correctly weighed Dr. Kwok's opinion."); *Strutz v. Colvin*, No. 3:14-CV-00807-SI, 2015 WL 4727459, at *8 (D. Or. Aug. 10, 2015) ("The first reason is not sufficiently specific—the ALJ did not identify with specificity any examples of

---

[10] This is the only reason the ALJ stated for rejecting Dr. Gordon's opinions. (*See* AR 28–29.) Although the Commissioner now attempts to defend the ALJ's decision by suggesting that Dr. Gordon's opinions were "consistent with benign objective clinical findings" and "at odds with Plaintiff's course of treatment" (*see* Doc. 15 at 7–10), a reviewing court cannot affirm the denial of benefits based on a reason not stated or finding not made by the ALJ. *See Trevizo*, 871 F.3d at 677 ("Because the ALJ did not provide these explanations herself as a reason to reject [the treating doctor's opinion], the district court erred in looking to the remainder of the record to support the ALJ's decision, and we cannot affirm on those grounds."); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."). The Commissioner's after-the-fact attempt to supply an acceptable basis for the ALJ's decision is therefore unavailing.

14

inconsistency with the record as a whole, despite the hundreds of pages of chart notes authored by Dr. Webb.").

Moreover, even if the Court presumes the ALJ intended to cite to the opinions of consultative examiner Dr. Wagner and non-examining physician Dr. Frye, who both opined Plaintiff was capable of at least frequent manipulative activities with both hands, the ALJ must do more than "assert[] without explanation that another medical opinion is more persuasive[.]" *Garrison*, 759 F.3d at 1012–13. This is particularly true where Dr. Gordon's opinions, issued in January and October 2016, considered Plaintiff's most recent nerve conduction studies from November 2015 finding evidence of carpal tunnel syndrome, while the September 2014 opinions of Drs. Frye and Wagner did not consider that evidence and only considered Plaintiff's previous unremarkable nerve conduction study from 2014. *See Rogers v. Comm'r of Soc. Sec.*, No. 09–CV–01972–JLT, 2011 WL 445047, at *8 (E.D. Cal. Jan. 25, 2011) ("[G]reater weight should be given to the more recent opinion of a physician." (citing *Lester*, 81 F.3d at 833)); *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (finding "the most recent medical report is the most probative" where the plaintiff's "condition was progressively deteriorating").

Therefore, even if the ALJ had specifically cited the opinions of Drs. Wagner and Frye, the ALJ erred by failing to explain why these other opinions were more persuasive than Dr. Gordon's opinions. *See e.g.*, *Goodman v. Berryhill*, No. 16-CV-02678-JSC, 2017 WL 1365122, at *11 (N.D. Cal. Apr. 14, 2017) ("The ALJ also erred to the extent he rejected the treaters' opinions because they were inconsistent with the opinions of the ME and non-examining consultants."); *see also Fortunel v. Comm'r of Soc. Sec.*, No. 2:15–cv–1198–KJN, 2016 WL 3880718, at *6 (E.D. Cal. July 18, 2016) ("Failing to articulate any reasons [for rejecting a physician's opinion], or articulating conclusory reasons without giving specific examples, is error[.]"); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings.").

### 3. Harmless Error Analysis

The Court must next address whether the ALJ's analysis pertaining to Dr. Gordon's

opinions was harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." (citing *Stout*, 454 F.3d at 1054)). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation. v. EPA*, 540 U.S. 461, 497 (2004))). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive―'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

In this case, the ALJ's erroneous analysis pertaining to Dr. Gordon was not harmless. Dr. Gordon opined Plaintiff could only lift up to five pounds "on a repetitive basis" and ten pounds occasionally, was "precluded from forceful gripping or manipulating using the left side," and limited to no more than thirty minutes of computer use every hour for a total of four hours of during an eight-hour period. (AR 576, 997.) However, the ALJ found that Plaintiff was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, and handling and fingering with both hands up to 2/3 of an eight-hour day. (AR 24.) This finding is irreconcilable with Dr. Gordon's opinions. As such, if the ALJ credited Dr. Gordon's opinions, the ALJ's RFC determination would be different, which would likely change the outcome of the ALJ's decision because according to the VE's testimony at the hearing, there may not be a significant number of jobs for an individual with limitations similar to those in Dr. Gordon's opinions. (*See* AR 78–79

(testifying that the job numbers for a person capable of light work who can only perform occasional manipulative activities, were "not strong"[11]); *see also e.g.*, *Randazzo v. Berryhill*, 725 Fed. Appx. 446 (9th Cir. 2017) (finding 10,000 jobs nationally was not a significant number of jobs in the nationally economy); *Lemauga v. Berryhill*, 686 Fed. Appx. 420, 422 (9th Cir. 2017) ("We note that this court has never found [12,600] to be significant.").

Accordingly, because the ALJ's error could be consequential as to the ultimate disability determination, the Court finds the error was not harmless.

**B.     The ALJ's Error Warrants Remand for Further Proceedings**

When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." *McAllister*, 888 F.2d at 603 (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Furthermore, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). On the other hand, "where the record has been fully developed such that further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke*, 379 F.3d at 593; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016).

Where, as here, an ALJ fails to "give sufficiently specific reasons for rejecting the conclusion of [a physician]," it is proper to remand the matter for "proper consideration of the physician['s] evidence." *Embrey,* 849 F.2d at 422; *see also Nguyen v. Chater*, 100 F.3d 1462, 1466–67 (9th Cir. 1996) (remanding for further proceedings where ALJ failed to "set forth specific, legitimate reasons" for crediting opinion of non-examining consultant over that of an examining psychologist). Accordingly, the Court exercises its discretion and remands this matter for further proceedings to allow the ALJ to reconsider the medical evidence, particularly Dr.

---

[11] The VE specifically testified that such a person could work as an usher, for which there exists 5,149 jobs nationally, and as a counter clerk, for which there exists 1,635 jobs nationally, but in her professional opinion, such a person could not work as a furniture clerk due to the frequent use of a computer, despite DOT guidance to the contrary. AR 78–79.

Gordon's opinions, and whether there are specific and legitimate reasons in the record to reject his opinions. *See McAllister*, 888 F.2d at 603 (remanding to allow the Commissioner to review the record and provide legally sufficient reasons for rejecting the treating physician's report and, alternatively, permitting the Commissioner to award benefits). On remand, the ALJ shall properly assess the medical evidence as a whole including the fingering and manipulative limitation opinions provided by Dr. Gordon as well as Drs. Blando and Abdali, determine Plaintiff's RFC, and proceed through Steps Four and Five to find what work, if any, Plaintiff is capable of performing

**C.     The Court Declines to Determine Plaintiff's Remaining Assertion of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider the medical opinion evidence and re-assess Plaintiff's RFC, the Court need not address Plaintiff's allegations of error concerning the consideration of the opinions of Drs. Abdali and Blando. *Cf. Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments.").

## VI.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Donna Johnson and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 6, 2019**                                       /s/ *Sheila K. Oberto*
                                                               UNITED STATES MAGISTRATE JUDGE